# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Michael E. Taylor, | : | Case No. 1:08CV1943 |
| Plaintiff | : | Judge Solomon Oliver, Jr. |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claims for disability benefits, (DIB), 42 U.S.C. §§416, 423 and supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in his favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

Plaintiff's right to benefits under both programs is dependent upon a showing that he is disabled, as that term is defined in the Social Security Act. Disability is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for not less than 12 months." 42 U.S.C. §§423(d)(1), 1383c(a).  The programs differ with regard to other qualifying criteria.  The disability benefits statute requires "fully insured" status, which focuses on the period of time the claimant has worked while covered by Social Security.  The SSI

program focuses on income and resources as basic eligibility factors.

The plaintiff's fully insured status expired on June 30, 2007. Therefore to be entitled to an award of DIB he must have been disabled, within the meaning of the Social Security Act, no later than that terminal date. He would, however, be entitled to an award of SSI if he was disabled as of his date of application or thereafter.

Plaintiff applied for benefits on February 22, 2005, alleging an onset date of April 1, 2002. In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "Injury left knee and leg" and "I can barely walk every day. In the last four months I may have been out of the house seven days. Can't climb steps or bend; today is first time I haven't been on crutches in quite awhile."

Upon denial of plaintiff's claims on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff was represented by counsel, was held on December 20, 2007. Also testifying at that proceeding was a vocational expert, Mr. Thomas Nimberger.

Although in his February 2005 applications the plaintiff assigned an injury to his left knee as his disabling impairment, at the December 2007 hearing his testimony was that at that time a right knee problem was his more severe problem:

> Q. You said that you have a left leg and knee injury is the reason for your disability.
>
> A. Yes.
>
> Q. Do you have any other physical problems?
>
> A. As of like about March of this year my right leg has started

    acting up and it's been giving me more problems than my left one. Well, what happened was a machine hit my left leg in 1994 and ever since then I had nothing but problems out of it. The doctor said since '94 on up until now I guess I been on my right leg to compensate off the left, tht it's just wore out.

Q. How much do you weigh?

A. About 290.

Q. Have the doctors talked to you bout having a knee replacement?

A. They have. They kind of said that maybe I might still be too young for that. But it's getting to the point where you're talking about two knee replacements.

Q. I noticed when you came into the courtroom you were using a cane in your right hand. How long have you been using a cane?

A. Off and on since '94. But like I said, my right leg is worse than my left one lately so I have to prop this one up. I don't too much go out because with my good knee acting up I'm scared because I never know when this one is going to act up. What do I do then?

          \*   \*   \*

Q. How long can you sit?

A. Well with these legs, especially this right one now, it's swelled up. The only relief I can get out on it is to put the immobilizer—They gave me a immobilizer for my left leg but I wound up having to put it on my right leg and then I prop it up on my cocktail table. Well, that's good for about 30 minutes. Then all I'm doing is letting it down a little, put it back up there, let it down. It's just constant. Never at peace.

 On December 8, 2008 the ALJ entered his opinion denying plaintiff's claims. That decision became defendant's final determination upon denial of review by the Appeals Council on July 22, 2008. The ALJ's "Findings of Fact and Conclusions of Law" were:

    1. The claimant met the insured status requirements of the Social

      Security Act on April 1, 2002, his alleged onset date of disability, and he continued to meet those requirements through June 30, 2007, but not thereafter.  There are no "insured status" requirements for Supplemental Security Income.

2. The claimant has not engaged in substantial gainful activity since June 1, 2002, his alleged onset date of disability (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative arthritis and joint disease of both knees with status torn meniscus of the left knee surgically treated in October 2005; and, obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the Court finds that the clamant has the residual functional capacity to lift up to 10 pounds at a time and to occasionally lift and/or carry articles such as docket files, ledgers and small tools.  He can sit for at least six hours, and stand and/or walk up to two hours during the course of an eight-hour workday. he can push and/or pull within the above described weight restrictions.  The clamant does not have any non-exertional limitations that preclude the performance of the full range of sedentary work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 1, 1959 and he is currently 48 years old, which is defined as a "younger individual."  He has been in this age category at all times relevant to this decision (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the

>   claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

The standards which control on a review of this nature were summarized by the Sixth Circuit in Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion, Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967). This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972). Rather "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. §405(g).
>
> The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality of the evidence must be based upon the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951). "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

In resolving the issue of whether the defendant's final determination is supported by

substantial evidence the decision upon judicial review cannot turn upon whether the reviewing court agrees with the Secretary's determination. Indeed, the reviewing court may conclude that substantial evidence would support a final determination contrary to that arrived at by the defendant and yet be obliged to affirm the defendant's final determination. In <u>Mullen v. Bowen</u>, 800 F.2d 535, at 545 (6th Cir. 1986), the court cited with approval the following from <u>Baker v. Heckler</u>, 730 F.2d 1147, 1150 (8th Cir. 1984):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposition decision.

The two issues presented on this appeal are:

1. Whether the Administrative Law Judge erred in failing to grant appropriate weight to the opinions of examining and non-examining physicians.

2. Whether evidence submitted subsequent to the hearing is new and material evidence warranting remand.

This Court finds neither position to be of merit, and in fact finds that the first of these positions is based upon a false premise.

Taking up the second of plaintiff's arguments first, 42 U.S.C. §405(g), in pertinent part, provides:

> The court may...at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

In order for the plaintiff to satisfy this burden of proof as to materiality, he/she must demonstrate

that there was a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence.  <u>Sizemore v. Secretary of Health and Human Services</u>, 865 F.2d 709, 711 (6th Cir. 1988).  <u>See</u> also, <u>Carroll v. Califano</u>, 619 F.2d 1157, 1162 (6th Cir. 1980).

The evidence relied upon in support of the request for remand was submitted to the Appeals Council under a cover letter dated March 31, 2008, and is identified as "copies of [the plaintiff's] January 18, 2008 and October 28, 2007 visit to the St. Vincent Charity Hospital emergency room noting continuing pain and a 7 of a 10 scale of disabling pain."  That evidence is found at pages 303-322 of the record.

There are two major problems with this argument.

First, the evidence in question predates entry of the ALJ's decision, and no reasonable explanation is offered demonstrating good cause for the failure to submit it to the ALJ.  The representation in plaintiff's brief that "the new records were not available at the time of the hearing as they occurred right around the hearing and into January 28, 2008, and were obtained as soon as they were available" is unconvincing.  The first of those visits occurred over four months before entry of the ALJ's decision, and the record of that visit certainly should have been obtainable during that period.  While the second visit was only one month before the ALJ's decision was issued plaintiff's (predecessor) counsel submitted other evidence that did not come into existence until January 9, 2008, the day after the second St. Vincent visit.

Consequently, this evidence fails the "good cause" prong of the requisite for remand.

Equally, if not more, important in this Court's opinion it also fails the materiality standard. There are no objective findings in these records which significantly differ from the medical evidence

7

which the ALJ considered.  In fact, X-rays taken on October 29, 2007 were interpreted by the radiologist as only reflecting "Mild osteoarthritis of both knees and small right knee joint effusion," and in discharge instructions issued to the plaintiff at that time he was informed that he was found to have degenerative arthritis which "is common in people past middle age."

The falsity in the premise of the argument that the ALJ failed to give appropriate weight to the opinions of examining and non-examining physicians is that the three individuals alluded to as "Dr. Ammon, Dr. O'Reilly, and Dr. Perry [sic] and eve [sic] Dr. Ammon"[1] are not medical doctors.

"Dr. Ammon" is a chiropractor associated with a practice to whom the plaintiff was referred (apparently by his counsel) in April 2007 for an impairment examination.  He never laid eyes (or hands) upon the plaintiff, as his report ends with the statement "Dr. Darly MacLeod, Chiropractic Physician, performed the examination and written report.  Dr. Ammon has reviewed the provided information but did not physically evaluate the patient."

"Dr. O'Reilly" is also a chiropractor associated with that same practice who saw the plaintiff once in January 2008.

"Dr. Petty" is a physical therapist who evaluated the plaintiff in August 2007.

In this regard 20 C.F.R. §404.1513 comes into play.  This regulation provides, in pertinent part, that "We need reports about your impairments from acceptable sources." "Acceptable sources" is defined as licensed physicians, osteopaths, psychologists, optometrists and persons authorized to send medical records.  Subsection (e) of the regulation provides:

> **(e) Information from other sources.**  Information from other sources may also help us understand how your impairment affects your ability to work.  Other sources include—

---

[1] The individual referred to as "Dr. Perry" is in fact named Eric T. Petty.  Why "Dr. Ammon" is named twice is unknown, and appears to simply be slip shod work.

8

\* \* \*

>  (c) Other practitioners (for example, naturopaths, chiropractors, audiologists, etc.).

In this case the ALJ did not disregard the evidence originating with the "other sources" relied upon by the plaintiff. Rather, he evaluated the evidence originating with them, and provided cogent reasons for not finding it sufficient to establish disability. This Court concludes that his doing so was clearly within his zone of choice.

This Court is constrained to observe that there is no evidence in this record that any physician advised the plaintiff of a need to keep his legs elevated, as he testified he must do. This court also notes that although the plaintiff testified that his right knee had become a problem close to the time of the evidentiary hearing his medical records reflect that he was complaining of right knee pain as far back as 1998 (R. 130), and that a report of an examination of the right knee in February 2005 states "The right knee has no effusion. Full range of motion. It is ligamentously stable."

It is, accordingly, recommended that final judgment be entered in the defendant's favor.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:   November 18, 2009

**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d

947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).